UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Scott Weller,

      Plaintiff,

    v.                                                Civil Action No. 5:10-CV-181

Steve Dykeman,

      Defendant.

## REPORT AND RECOMMENDATION
(Doc. 26)

Plaintiff Scott Weller, a Vermont inmate proceeding *pro se*, brings this action claiming that Defendant Steve Dykeman violated his constitutional right of access to the courts. Specifically, Weller claims that Dykeman, a living unit supervisor at Northern State Correctional Facility ("NSCF"), denied him access to a telephone for use in a telephonic state court proceeding. Dykeman now moves for judgment on the pleadings (Doc. 26), arguing that Weller has failed to state a constitutional claim. For the reasons set forth below, I recommend that Dykeman's motion be DENIED.

## Factual Background

Weller claims that he was transferred to NSCF on October 20, 2008. During the admission process, a Correctional Officer allegedly confiscated three pieces of jewelry worth a total of $522.00. Weller requested that the items be "sent out through visiting" the next time his mother came to visit. (Doc. 5 at 3.) When his mother came to NSCF to

visit, she was told that the jewelry had been mailed to her.  Weller's mother never received the jewelry.

Weller subsequently filed a claim for the jewelry through the prison's administrative claim process.  The claim was denied.  On July 7, 2008, he filed a small claims complaint in the Orleans County Superior Court in Newport, Vermont.  On December 29, 2008, he received a notice of hearing notifying him that the action would be heard on January 28, 2009 at 10:00 a.m.  The notice allegedly specified that "[i]f you are a plaintiff and fail to appear, your case will be dismissed."  Vermont's small claims statute provides that small claims courts "shall decide" prisoner claims "on the basis of affidavits of the parties and testimony by telephone."  32 V.S.A. § 933(b).

On January 27, 2009, Weller showed Defendant Dykeman the notice of hearing and advised that he would need access to a telephone the following morning.  Dykeman initially agreed to Weller's request.  On the morning of the hearing, however, Dykeman allegedly told Weller that he could not use a phone, and that "'[i]f the Court wants to talk to you, they'll call here.'"  (Doc. 5 at 4.)  Weller claims he explained to Dykeman that the notice of hearing "specifically stated that Plaintiff was to call the Court, not the other way around," at which point Dykeman allegedly became "irate" and threatened to send Weller "to the hole" if he "kept it up."  *Id.* at 5.

At 10:00 that morning, Weller searched for Dykeman to make one last plea for access to a phone, but Dykeman's office was "dark and locked up."  *Id.*  When Weller was informed that only a living unit supervisor or a case worker could provide him access to a phone, he searched unsuccessfully for a supervisor.  Weller then allegedly asked one

of the Correctional Officers to call a supervisor, but she refused.  Ultimately, Weller was unable to contact the small claims court on the day of his hearing.

Weller subsequently wrote to the small claims court and explained why he had been unable to call.  Shortly thereafter, however, he received a notice of dismissal from the court.  Weller appealed, but the appeal was denied.  He initiated the instant case in July 2010, claiming that Dykeman had "violated Plaintiff's right to access the courts and petition the government for redress of grievances, as set forth and in violation of, the First Amendment of the United States Constitution."  *Id.* at 6.  For relief, he is seeking $522.00 in compensation for the missing property, $50,000 for the violation of his constitutional rights, and $50,000 in punitive damages.

## Discussion

### I. Legal Standard

Defendant Dykeman has moved to dismiss pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  Rule 12(c) provides that "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted.  *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006).  Accordingly, the court must accept Weller's factual allegations as true and draw all inferences in his favor.  *Id.*  The court's function "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof."  *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980).  A

3

claim will be dismissed where it fails to set forth sufficient facts to state a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## II.     Access to Courts

Dykeman argues that Weller has failed to state a viable constitutional claim. Dykeman concedes that prison officials cannot interfere with an inmate's access to the courts, but argues that the right of access applies only to "a claim that challenges the inmate's sentence or a civil rights claim." (Doc. 26 at 6) (citing *Lewis v. Casey*, 518 U.S. 343, 350 (1996)). Dykeman also argues that once an inmate has filed an initial pleading, he has no right to "effective litigation once in court." *Id.* (citing *Lewis*, 518 U.S. at 354).

It is well established that prisoners have a constitutional right to "adequate, effective, and meaningful" access to the courts. *Bounds v. Smith*, 430 U.S. 817, 822 (1977); *see also Lewis*, 518 U.S. at 346; *Bourdon v. Loughren*, 386 F.3d 88, 92-93 (2d Cir. 2004); *Davis v. Goord*, 320 F.3d 346, 351-52 (2d Cir. 2003). In *Lewis*, the Supreme Court addressed a state's affirmative obligation to provide legal resources, such as law libraries and legal assistants, to prison inmates. 518 U.S. at 355. Acknowledging that inmates generally have a right of access to the courts, the Supreme Court held states are only required to provide "[t]he tools . . . that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Id.* The Court also rejected any requirement that inmates be provided tools to litigate effectively once in court. *Id.*

4

Here, Weller is not complaining about prison legal resources. Instead, he claims that a prison official actively interfered with his ability to appear by telephone at a state court hearing. Several courts have held that *Lewis* does not apply to cases of active interference, and that such interference is unlawful regardless of type of case being pursued. *See, e.g., Silva v. DiVittorio*, 658 F.3d 1090, 1102 (9th Cir. 2011) ("aside from their affirmative right to the tools necessary to challenge their sentences or conditions of confinement, prisoners also have a right, protected by the First Amendment right to petition and the Fourteenth Amendment right to substantive due process, 'to pursue legal redress for claims that have a reasonable basis in law or fact'") (quoting *Snyder v. Nolen*, 380 F.3d 279, 290-91 (7th Cir. 2004)); *Cohen v. Longshore*, 621 F.3d 1311, 1317 (10th Cir. 2010) ("although *Lewis* limits the types of cases in which the prison must provide affirmative assistance, it does not give free reign to prison authorities to interfere with and impede a prisoner's pursuit of other legal actions"); *McKenzie v. Fabian*, 2009 WL 2982541, at *7 (D. Minn. Sept. 11, 2009) (concluding that *Lewis* "does not mean that a prison may erect barriers that prevent inmates from exercising their right to access to the courts in an unrelated civil matter, or that prisoners have no constitutionally protected right to litigate an unrelated civil matter without prison intervention").

The Second Circuit recently questioned whether the limitations set forth in *Lewis* should be extended to "the context of interference" by prison personnel. *Montanez v.*

*Cuoco*, 2010 WL 200005, at *2 (2d Cir. Jan. 22, 2010) (unpublished opinion).[1] The Circuit has long held that "[a] prisoner has a constitutional right of access to the courts for the purpose of presenting his claims, a right that prison officials cannot unreasonably obstruct and that states have affirmative obligations to assure." *Washington v. James*, 782 F.2d 1134, 1138 (2d Cir. 1986) (citing *Bounds v. Smith*, 430 U.S. 817, 821-23 (1977)); *cf. Whalen v. County of Fulton*, 126 F.3d 400, 406-07 (2d Cir. 1997) ("The constitutional right of access [to the courts] is violated where government officials obstruct legitimate efforts to seek judicial redress."). For example, in *Morello v. James*, 810 F.2d 344, 347 (2d Cir. 1987), the Second Circuit stated that "intentional obstruction of a prisoner's access to the courts is precisely the sort of oppression that the Fourteenth Amendment and section 1983 are intended to remedy."

Since *Lewis*, the Second Circuit has continued to hold that the right of access to courts "ensur[es] that all citizens have the right to sue and defend in the courts." *Bourden*, 386 F.3d at 98 n.8. Recognizing the distinctions set forth in *Lewis,* the *Bourden* decision determined that the right of access has a "particular application" when prisoners are defending against criminal charges, challenging convictions or sentences, or bringing civil rights claims regarding conditions of confinement, and that states must provide inmates the necessary "tools" to pursue such claims. *Id.* In citing this "particular application," however, *Bourden* did nothing to diminish a prisoner's general right of

---

[1] The court may find that an unpublished Second Circuit opinion, while not binding, is persuasive and predictive of how that court would decide an issue in future cases. *See, e.g., LaSala v. Bank of Cyprus Pub. Co., Ltd.*, 510 F. Supp. 2d 246, 274 n.10 (S.D.N.Y. 2007) (finding an unpublished Second Circuit opinion "highly persuasive . . . and eminently predictive of how the Court would in fact decide a future case such as this one"); *Bernshteyn v. Feldman*, 2006 WL 2516514, at *3 n.3 (S.D.N.Y. Aug. 29, 2006) (finding an unpublished opinion by the Second Circuit persuasive authority).

6

access to the courts, concluding only that the mandate for litigation tools was an "additional require[ment]." *Montanez*, 2010 WL 200005, at *2 (discussing *Bourden*, 386 F.3d at 93 n.8).

Most recently, in *Montanez*, the Circuit cited a legal treatise for the proposition that while some "'courts do not recognize a right to state-sponsored assistance of access for civil matters not connected with conditions of confinement, this does not mean that prison officials may obstruct inmates from bringing such claims or retaliate against them if they do.'" 2010 WL 2000005, at *2 (citing Michael B. Mushlin, Right of Prisoners § 12.6 (3d ed. 2002)). The court also cited language in *Morello* to the effect that a prisoner's right of access to courts "cannot be obstructed." *Id.* (citing *Morello*, 810 F.2d at 346-47).

In sum, Dykeman's application of *Lewis* has been called into question by the Second Circuit, is contrary to basic constitutional principles, and has been squarely rejected in several other jurisdictions. Specifically, the Second Circuit has noted that *Lewis* pertains to a state's *affirmative* duty to provide legal resources for certain types of cases, and has questioned whether its holding should be extended to "the context of interference." *Id.* Moreover, the Second Circuit has long acknowledged prisoners' constitutional right of access to the courts, and has held repeatedly that the state may not obstruct that right. *See Washington*, 782 F.2d at 1138; *Morello*, 810 F.2d at 347. Finally, other Circuits have held that sort of interference alleged in this case, effectively barring an inmate from entering the courthouse door, is unconstitutional, and that the limitations set forth in *Lewis* do not apply in such instances. *E.g., Silva,* 658 F.3d at 1102*; Cohen*,

7

621 F.3d at 1317. Given this status of the law, I find Dykeman's argument – that Weller had no constitutional right to pursue his small claims action in state court – unpersuasive.

Dykeman also argues that because Weller was able to file documents in state court, and ultimately file an appeal, his access to the courts was not obstructed. With respect to the ability to file documents in state court, Dykeman again relies on *Lewis* for the proposition that prison officials need not guarantee an inmate's ability to litigate effectively once in Court. (Doc. 26 at 4) (citing *Lewis*, 518 U.S. at 354). As above, this language pertains to the state's affirmative obligations to its inmates. *Lewis*, 518 U.S. at 354 ("To demand conferral of such sophisticated capabilities . . . is effectively to demand permanent provision of counsel, which we do not believe the Constitution requires."). In general, basic access to courts principles dictate that prison officials may not actively interfere with an inmate's litigation efforts. *See Barrett v. United States*, 798 F.2d 565, 575 (2d Cir. 1986) ("Unconstitutional deprivation of a cause of action occurs when government officials thwart vindication of a claim by violating basic principles that enable civil claimants to assert their rights effectively.") (citing *Goldberg v. Kelly*, 397 U.S. 254, 261-71 (1970)). The court should find that these principles govern Dykeman's decision to bar Weller from participating in the state court hearing.

Finally, as to Weller's ability to file an appeal, there is no information in the record about either the arguments raised on appeal, or the state court's reason(s) for denying the appeal. Without such information, this court is unable to determine whether the denial of access to a telephone was the proximate cause of Weller's alleged injury. I therefore recommend that Dykeman's motion for judgment on the pleadings be DENIED.

8

## **Conclusion**

For the reasons set forth above, I recommend that Dykeman's motion for judgment on the pleadings (Doc. 26) be DENIED.

Dated at Burlington, in the District of Vermont, this 30th day of November, 2011.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within fourteen days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2), 6(a), 6(d); L.R. 72(c). Failure to timely file such objections operates as a waiver of the right to appellate review of the District Court's adoption of such Report and Recommendation.  *See Fed. R. Civ. P. 72(a); Small v. Sec'y of Health and Human Servs*., 892 F.2d 15, 16 (2d Cir. 1989).