U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2012 MAR 14 PM 1:03

CLERK
BY _____PM_____
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| SCOTT WELLER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 5:10-cv-181 |
| ) | |
| STEVE DYKEMAN, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER
## ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
## AND DENYING DEFENDANT'S MOTION FOR JUDGMENT
## ON THE PLEADINGS
(Docs. 26, 31)

This matter came before the court on the Objection of Defendant Steve Dykeman (Doc. 32) to the Magistrate Judge's Report and Recommendation ("R & R") filed on November 30, 2011 (Doc. 31).

In this lawsuit, Plaintiff Scott Weller alleges that Defendant, the living unit supervisor at Northern State Correctional Facility ("NSCF") where Plaintiff is incarcerated, denied Plaintiff's right to access to the courts when he allegedly prevented Plaintiff's telephone participation in a small claims court hearing. In the R & R, the Magistrate Judge recommended denying Defendant's motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) (Doc. 26). Defendant objects to the R & R, contending that: (1) Plaintiff fails to allege a constitutionally protected interest in access to a small claims proceeding; (2) Plaintiff fails to plead sufficient facts to allege an injury caused by Defendant; and (3) under "principles of federalism," the court should refrain from assessing the merits of Plaintiff's claim.

Plaintiff is self-represented. Defendant is represented by Assistant Attorney General Emily A. Carr.

I.  **Factual Background.**

The parties do not dispute the Magistrate Judge's recitation of the operative facts. The court therefore adopts them verbatim:

> Weller claims that he was transferred to NSCF on October 20, 2008. During the admission process, a Correctional Officer allegedly confiscated three pieces of jewelry worth a total of $522.00. Weller requested that the items be "sent out through visiting" the next time his mother came to visit. (Doc. 5 at 3.) When his mother came to NSCF to visit, she was told that the jewelry had been mailed to her. Weller's mother never received the jewelry.
>
> Weller subsequently filed a claim for the jewelry through the prison's administrative claim process. The claim was denied. On July 7, 2008, he filed a small claims complaint in the Orleans County Superior Court in Newport, Vermont. On December 29, 2008, he received a notice of hearing notifying him that the action would be heard on January 28, 2009 at 10:00 a.m. The notice allegedly specified that "[i]f you are a plaintiff and fail to appear, your case will be dismissed." Vermont's small claims statute provides that small claims courts "shall decide" prisoner claims "on the basis of affidavits of the parties and testimony by telephone." 32 V.S.A. § 933(b).
>
> On January 27, 2009, Weller showed Defendant Dykeman the notice of hearing and advised that he would need access to a telephone the following morning. Dykeman initially agreed to Weller's request. On the morning of the hearing, however, Dykeman allegedly told Weller that he could not use a phone, and that "'[i]f the Court wants to talk to you, they'll call here.'" (Doc. 5 at 4.) Weller claims he explained to Dykeman that the notice of hearing "specifically stated that Plaintiff was to call the Court, not the other way around," at which point Dykeman allegedly became "irate" and threatened to send Weller "to the hole" if he "kept it up." *Id.* at 5.
>
> At 10:00 that morning, Weller searched for Dykeman to make one last plea for access to a phone, but Dykeman's office was "dark and locked up." *Id.* When Weller was informed that only a living unit supervisor or a case worker could provide him access to a phone, he searched unsuccessfully for a supervisor. Weller then allegedly asked one of the Correctional Officers to call a supervisor, but she refused. Ultimately, Weller was unable to contact the small claims court on the day of his hearing.

2

Weller subsequently wrote to the small claims court and explained why he had been unable to call. Shortly thereafter, however, he received a notice of dismissal from the court. Weller appealed, but the appeal was denied. He initiated the instant case in July 2010, claiming that Dykeman had "violated Plaintiff's right to access the courts and petition the government for redress of grievances, as set forth and in violation of, the First Amendment of the United States Constitution." *Id.* at 6. For relief, he is seeking $522.00 in compensation for the missing property, $50,000 for the violation of his constitutional rights, and $50,000 in punitive damages.

(Doc. 31 at 1-3.)

## II. Conclusions of Law and Analysis.

### A. Standard of Review.

A district judge must make a *de novo* determination of those portions of a magistrate judge's report and recommendation to which an objection is made. Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1); *Cullen v. United States*, 194 F.3d 401, 405 (2d Cir. 1999). The district judge may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *accord Cullen*, 194 F.3d at 405. A district judge, however, is not required to review the factual or legal conclusions of the magistrate judge as to those portions of a report and recommendation to which no objections are addressed. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985).

"After pleadings are closed--but early enough not to delay trial--a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A Rule 12(c) motion "'is designed to provide a means of disposing of cases when the material facts are not in dispute and a judgment on the merits can be achieved by focusing on the content of the pleadings and any facts of which the court will take judicial notice.'" *Taylor v. City of New York*, 953 F. Supp. 95, 97 (S.D.N.Y. 1997) (quoting Charles A. Wright, Arthur R. Miller *et al.*, FEDERAL PRACTICE & PROCEDURE, § 1367, at 509-10 (2d ed. 1990)). "To survive a Rule 12(c) motion, [Plaintiff's] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Johnson v. Rowley*, 569 F.3d 40, 44 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949

(2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal quotation marks omitted).

### B. Whether Plaintiff Has Alleged an Access to Courts Claim.

The thrust of Defendant's Objection to the R & R is that Plaintiff has failed to allege a denial of access to the courts claim under *Lewis v. Casey*, 518 U.S. 343 (1996) because Plaintiff does not have a constitutionally protected interest in pursuing a small claims action against the State of Vermont. He urges the court to follow the lead of the District of Connecticut in concluding that a small claims proceeding "is not the type of case contemplated by the Supreme Court in *Lewis* as implicating a constitutional right to access to the courts." (Doc. 32 at 5 (quoting *Dunkley v. Rodwell*, 2004 WL 2106595, at *3 (D. Conn. Sept. 17, 2004)).

In *Lewis*, in addressing an inmate's claim for denial of access to the courts, the Supreme Court concluded that a state has an affirmative obligation to provide adequate law libraries or adequate assistance from a person trained in the law to inmates challenging their sentences or conditions of confinement. *Lewis*, 518 U.S. at 355 (citing *Bounds v. Smith*, 430 U.S. 817, 828 (1977)). The Court acknowledged, however, that there are limits on this obligation and the Constitution "does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims." *Lewis*, 518 U.S. at 355. As such, the tools that must be provided "are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Id.* (emphasis omitted). *Lewis* also held that the Constitution does not require the state to "enable the prisoner to discover grievances, and to litigate effectively once in court." *Id.* at 354 (emphasis omitted).

In this case, Plaintiff neither challenges his sentence nor his conditions of confinement. However, as the Magistrate Judge correctly points out, post *Lewis*, some courts have found the constitutional right of access to the courts is not limited to those

4

challenges. *See, e.g., Silva v. Di Vittorio*, 658 F.3d 1090, 1103 (9th Cir. 2011) ("aside from their affirmative right to the tools necessary to challenge their sentences or conditions of confinement, prisoners also have a right, protected by the First Amendment right to petition and the Fourteenth Amendment right to substantive due process, 'to pursue legal redress for claims that have a reasonable basis in law or fact.'") (quoting *Snyder v. Nolen*, 380 F.3d 279, 290-91 (7th Cir. 2004)); *Cohen v. Longshore*, 621 F.3d 1311, 1317 (10th Cir. 2010) ("although *Lewis* limits the types of cases in which the prison must provide affirmative assistance, it does not give free reign to prison authorities to interfere with and impede a prisoner's pursuit of other legal actions."); *McKenzie v. Fabian*, 2009 WL 2982641, at *7 (D. Minn. Sept. 11, 2009) (although under *Lewis* a prison may not be obligated to assist an inmate with a civil lawsuit unrelated to incarceration, "that does not mean that a prison may erect barriers that prevent inmates from exercising their right to access to the courts in an unrelated civil matter, or that prisoners have no constitutionally protected right to litigate an unrelated civil matter without prison intervention.").

Notwithstanding the district court's decision in *Dunkley*, the apparent trend in the Second Circuit is to expand the right of access to the courts beyond the circumstances outlined in *Lewis*. In *Bourdon v. Loughren*, 386 F.3d 88 (2d Cir. 2004), the Second Circuit observed that "[t]he right of access to the courts applies beyond criminal litigation, ensuring that all citizens have '[t]he right to sue and defend in the courts.'" *Id.* at 93 n.8 (quoting *Chambers v. Baltimore & Ohio R.R. Co.*, 207 U.S. 142, 148 (1907)). The court has further held that "[t]he right of access to courts extends beyond mere physical access to a courtroom and a judge." *Monsky v. Moraghan,* 127 F.3d 243, 246 (2d Cir. 1997). Accordingly, although presented with an opportunity to do so, the Second Circuit has not ruled out the possibility that a denial of access claim may be brought based upon actual prejudice to a plaintiff's pending civil action. *See id.* at 247 (affirming dismissal of plaintiff's claim based upon harassment by judge's dog in clerk's office because plaintiff alleged only "extreme emotional distress" and did not allege "that she cut short her visits to the Clerk's office or decided against returning on some future

5

occasion. Nor does she claim that the defendant's behavior caused any prejudice to her pending state-court litigation."); *see also Montanez v. Cuoco*, 361 Fed. App'x 291, 293-94 (2d Cir. 2010) ("'Even though these courts do not recognize a right to state-sponsored assistance of access for civil matters not connected with conditions of confinement, this does not mean that prison officials may obstruct inmates from bringing such claims or retaliate against them if they do.'") (quoting Michael B. Mushlin, Rights of Prisoners § 12.6 (3d ed. 2002)).

In light of the state of the law in the Second Circuit and elsewhere post *Lewis*, the court agrees with the Magistrate Judge that Plaintiff has stated a plausible denial of access to the courts claim based upon "a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(2).

### C. Defendant's Objection Based Upon Absence of Actual Injury.

"In order to establish a violation of a right of access to the courts, a plaintiff must demonstrate that a defendant caused 'actual injury,'" [*Lewis*, 518 U.S. at 351], *i.e.*, took or was responsible for actions that 'hindered [a plaintiff's] efforts to pursue a legal claim, *id.* at [351]." *Monsky*, 127 F.3d at 247. In his objection to the R & R, Defendant contends that judgment on the pleadings is appropriate because "Mr. Weller cannot establish any injury arising from Mr. Dykeman's alleged conduct." (Doc. 32 at 2). Defendant points out that "Mr. Weller was able to pursue the vast majority of court procedures available to him in attempting to recover $522.00 for lost property from the State," *id.*, including filing "his small claims Complaint without any difficulty[,] *id.* and "appeal[ing] the dismissal of his claim to the Superior Court, which he also did." *Id.* In making this argument Defendant relies in part upon the Decision on Appeal from Small Claims Court which he submits for the first time with his Objection, contending that it is incorporated by reference in Plaintiff's Complaint, or in the alternative, asking the court to take judicial notice of it. Defendant therefore urges the court to reject the Magistrate Judge's conclusion that "there is no information in the record about either the arguments raised on appeal, or the state court's reason(s) for denying the appeal." (Doc. 31 at 8.)

The court turns first to whether Defendant adequately raised the absence of injury argument before the Magistrate Judge so that it may serve as the basis for an objection to the R & R. In his five page motion for judgment on the pleadings, Defendant addresses the Complaint's failure to allege actual injury in only a cursory and conclusory fashion. *See* Doc. 26 at 4 ("[T]here is no claim for access-to-courts in this matter since Plaintiff was able to file his small claims matter. *See* Complaint at 19. Further, he was able to appeal the outcome. *See id.* at 36. Therefore, his access to courts was not obstructed."). Defendant's motion neither attached the Decision on Appeal nor mentioned its contents. Accordingly, Defendant should not now be heard to complain that the Magistrate Judge erred in failing to fully consider it. On the other hand, in a *de novo* review where an argument has at least arguably been preserved, the court should proceed to address it especially when no party has objected to its doing so. The court thus proceeds to determine whether the Decision on Appeal is properly before the court.

"On a 12(c) motion, the court considers 'the complaint, the answer, any written document attached to them, and any matter of which the court can take judicial notice for the factual background of the case.'" *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (quoting *Roberts v. Babkiewicz*, 582 F.3d 418, 419 (2d Cir. 2009)). "A complaint is [also] deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference are integral to the complaint." *Id.* (citation and internal quotation marks omitted). Here, the Complaint states "Plaintiff attempted to appeal the Court's decision, but the appeal was denied. *See Weller v. Department of Corrections*[,] Docket No. 34-2-09 Oscv." (Doc. 5 at 5). This allegation, which is integral to Plaintiff's denial of access claim, is sufficient to place the Decision on Appeal before the court on a motion for judgment on the pleadings. *See Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004) (document not expressly cited in complaint was "incorporated into the pleadings because [it] was integral to [plaintiff's] ability to pursue" his cause of action); *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) (necessity of converting motion for judgment on the pleadings to summary judgment motion is

"largely dissipated" where plaintiff had "actual notice" of information in documents and "relied upon [them] in framing the complaint.").

The Decision on Appeal states that "Mr. Weller appeals claiming that (1) he was unable to attend the hearing because he was in jail; (2) the small claims court never contacted Mr. Weller's case worker to schedule a phone conference; and (3) he was unaware that he had to arrange an appearance by phone." (Doc. 32-1 at 1). Somewhat at odds with Plaintiff's third ground for appeal are Plaintiff's present allegations that he repeatedly reminded Defendant that "Plaintiff was to call the Court, not the other way around" and his further allegation that Defendant deliberately ignored this information and advised Plaintiff that he would be "'dragged to the hole' (i.e. place[d] in segregation)" if Plaintiff persisted with his requests to call into the court. (Doc. 5 at ¶¶23-28).

In deciding a motion for judgment on the pleadings, the court must assume all factual allegations are true "unless contradicted by more specific allegations or documentary evidence[.]" *L-7 Designs, Inc.*, 647 F.3d at 422; *see also Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 222 (2d Cir. 2004) (discrediting allegation "belied" by letters attached to the complaint); *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 405 (S.D.N.Y. 2001) (ruling that "a court need not feel constrained to accept as truth pleadings . . . that are contradicted either by statements in the complaint itself or by documents upon which its pleadings rely[.]"). In this case, there is an apparent contradiction between what Plaintiff now claims prevented his access to the small claims proceeding and what he argued on appeal prevented his access to the court. In the absence of evidence of the actual arguments Plaintiff made on appeal (as opposed to the appellate court's characterization of those arguments), the court, however, cannot find a direct contradiction exists. The court is thus left with factual allegations in the Complaint which, if accepted as true, adequately allege that that Defendant's refusal to allow Plaintiff to call the small claims court "directly hindered Plaintiff's ability to pursue a non-frivolous legal claim to the point of having caused actual injury and prejudice to the case." (Doc. 5 at ¶ 41.)

Defendant cites no authority for the proposition that the right to appeal negates any denial of access. Accordingly, the court agrees with the Magistrate Judge that the Defendant has not demonstrated his entitlement to judgment on the pleadings based upon the absence of an actual injury.

### D. Whether the Court Should Refrain From Addressing Plaintiff's Small Claim.

Defendant objects to the R & R on the final ground that principles of federalism dictate that this court should not consider the merits of Plaintiff's state court claim as in doing so this court "would necessarily become mired in the facts and law of Mr. Weller's small claim – a claim over which it would lack subject matter jurisdiction – if it permits his access to courts claim to go forward." (Doc. 32 at 4.) The Magistrate Judge did not address this argument as Defendant failed to raise it in his motion for judgment on the pleadings.

In *Wells Fargo Bank N.A. v. Sinnott*, 2010 WL 297830 (D. Vt. Jan. 19, 2010), this court noted that "the Second Circuit has not decided whether a district court must consider a legal argument raised for the first time in an objection to a magistrate judge's report and recommendation." *Id.* at *1. In the absence of such guidance, this court concluded that "a district court has discretion to consider, or decline to consider" such an argument, *id.* at *2 and applied a multi-factor test to guide the exercise of its discretion:

> (1) the reason for the litigant's previous failure to raise the new legal argument; (2) whether an intervening case or statute has changed the state of the law; (3) whether the new issue is a pure issue of law for which no additional fact-finding is required; (4) whether the resolution of the new legal issue is not open to serious question; (5) whether efficiency and fairness militate in favor or against consideration of the new argument; and (6) whether manifest injustice will result if the new argument is not considered.

*Id.* at *4.

Application of the *Sinnott* factors to the instant case reveals that Defendant provides no explanation for his failure to raise a federalism argument previously. Moreover, this is not a situation where an intervening case or statute has changed the

9

legal complexion of the case. Although Defendant's new argument presents a pure issue of law, it is not one free from serious question such that it could be readily decided without the benefit of briefing by both parties. Finally, at this nascent stage of the proceedings, neither efficiency nor fairness require consideration of Defendant's new argument which may be renewed in a subsequent motion such that no manifest injustice will result if it is not considered now. The court thus declines to address Defendant's federalism argument raised for the first time as an objection to an R & R.

## CONCLUSION

For the reasons stated above, the court hereby ADOPTS the Magistrate Judge's R & R (Doc. 31). The court DENIES Defendant's motion for judgment on the pleadings (Doc. 26).

SO ORDERED.

Dated at Rutland, in the District of Vermont, this 14th day of March, 2012.

Christina Reiss, Chief Judge
United States District Court