UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Scott Weller,

      Plaintiff,

      v.                                             Civil Action No. 5:10-CV-181

Steve Dykeman,

      Defendant.

# REPORT AND RECOMMENDATION
(Doc. 36)

Plaintiff Scott Weller, a Vermont correctional facility inmate proceeding *pro se*, brings the instant case pursuant to 42 U.S.C. § 1983 claiming that Defendant Steve Dykeman, acting in his individual capacity, violated his constitutional right of access to the courts. Specifically, Weller alleges that Dykeman, the living unit supervisor at Northern State Correctional Facility ("NSCF") prevented him from telephonic participation in a small-claims court hearing. Previously, Dykeman filed a Motion for Judgment on the Pleadings (Doc. 26), claiming that Weller had failed to state a viable constitutional claim on the basis that a prisoner's right of access to the courts only applies to "a claim that challenges the inmate's sentence or a civil rights claim." (Doc. 26 at 3.) This court recommended denial of the motion (Doc. 31), which the district court adopted (Doc. 35). *See Weller v. Dykeman*, No. 5:10-CV-181, 2011 WL 7502139 (D. Vt. Nov. 30, 2011), *adopted*, 2012 WL 872398 (D. Vt. Mar. 14, 2012). Now Dykeman moves for

summary judgment, (Doc. 36) pursuant to Fed. R. Civ. P. 56, on two grounds: (1) Weller failed to exhaust his administrative remedies, as called for by 42 U.S.C. § 1997e(a); and (2) Weller's allegations fail to state a constitutional violation because Dykeman took no intentional, deliberate steps to hinder Weller's pursuit of his cause of action in small-claims court.[1] (*Id.*) Weller has not filed a response to the motion.

For the reasons that follow, I recommend that Dykeman's motion for summary judgment be GRANTED due to Weller's failure to exhaust his administrative remedies. I further recommend that, in light of his *pro se* status, Weller be allowed thirty days to file an Amended Complaint.

## **Factual and Procedural Background**

Certain facts are undisputed. At the time he filed the instant case, Plaintiff Scott Weller was an inmate in custody with the Vermont Department of Corrections ("DOC").[2] (Docs. 5 at 1; 36-1at 1.) In October 2008, Weller was transferred to the NSCF. (Doc. 5 at 3.) Defendant Steve Dykeman worked at NSCF as a Corrections Service Specialist, which entails supervising offenders assigned to his caseload, evaluating their progress, addressing their needs, and recommending custody classification of offenders. (Doc. 36-5 at 1.) At the time of the events giving rise to this claim, Weller was one of the offenders assigned to Dykeman's caseload. (*Id.*)

---

[1] Dykeman also renews his argument from his motion for judgment on the pleadings that "a small claim against the state does not implicate an offender's constitutional right of access to the courts." (Doc. 36 at 7.) In light of this court's rejection of this argument and the absence of any new controlling precedent uncovered by Dykeman calling this result into question, there is no need to address this point further.

[2] Weller has since been released from DOC custody. (Doc. 34.)

2

On July 7, 2008, Weller filed a small-claims complaint in the Orleans County Superior Court, seeking $582.00 in damages[3] for jewelry he claimed were mailed out of NSCF to his mother but were never received.[4] (Doc. 36-2.) On December 29, 2008, Weller received a notice of his small-claims hearing, which was scheduled for January 28, 2009 at 10 a.m. (Docs. 5 at 4; 36-3.) This notice specifically stated that "[i]f you are a plaintiff and fail to appear, your case will be dismissed."[5] (Doc. 36-3.) Ultimately, Weller did fail to appear and his case was dismissed. (Doc. 36-4.) The reason why Weller failed to appear for that hearing is where Weller's Complaint and Dykeman's affidavit diverge.

According to Weller's Complaint, he approached Dykeman about his hearing on January 27, 2009. Weller told Dykeman that he needed to phone the small-claims court the following day. (Doc. 5 at 4.) Dykeman initially indicated his agreement with Weller's request, but on the morning of the hearing, he told Weller that he could not use the telephone and that "[i]f the Court wants to talk to you, they'll call here." (*Id.*) Weller claims that he then explained to Dykeman that the notice specifically stated that the plaintiff in the case was obligated to call the court (*id.*), at which point Dykeman

---

[3] This claim consisted of $522 in damages, and $60 in court costs. (Doc. 36-2.)

[4] Weller avers in his Complaint that he filed an administrative small claim pursuant to DOC regulations and as required by Vermont statute, *see* 32 V.S.A. § 932, which was denied. (Doc. 5 at 3-4.) Dykeman has not disputed this point.

[5] Vermont's small-claims statute provides that small-claims courts "shall decide" prisoner claims "on the basis of affidavits of the parties and testimony by telephone." 32 V.S.A. § 933(b). "For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against the defendant." V.R.C.P. 41(b)(2); *see* V.R.S.C.P. 13 ("When matters arise that are not covered by these rules, the court will proceed by analogy to any applicable provision of the Vermont Rules of Civil Procedure that is consistent with these rules and with the objective of securing a simple, informal, and inexpensive disposition of the claim.").

3

"became irate" and threatened to send Weller "to the hole" (i.e., segregated confinement) if he "kept it up" (*id*. at 5). At 10 a.m. that morning (the time the hearing was scheduled to begin), Weller again went to Dykeman's office to try to convince him to let him call the court, but the office was "dark and locked up." (*Id*.) When Weller was informed that only a living unit supervisor, like Dykeman, could give him access to a phone, he searched for a supervisor. (*Id*.) He asked a correctional officer to call a supervisor, but she refused. (*Id*.) As a result, Weller was unable to contact the court on the day of his hearing. (*Id*.)

Dykeman tells a different story. In his affidavit filed in support of his motion for summary judgment, Dykeman claims that Weller told him about the hearing on January 29, 2009 only after it had already taken place without Weller's participation. (Doc. 36-5 at 1.) According to Dykeman's "accurate and reliable" case notes of this meeting (notes that it is his "regular practice" to keep), Weller said that he had forgotten about the hearing. (*Id*. at 2.) Dykeman did not "specifically recall whether Mr. Weller had previously informed [him] of this hearing." (*Id*. at 1.) Dykeman could recall enough, however, to deny the allegations in Weller's Complaint that he had an attitude, told Weller the court would call if they wanted to talk to him, and threatened him with segregation if he persisted in his requests. (*Id*. at 2.) Dykeman then states that it is his "general practice" to make arrangements for an offender's telephonic participation when an offender notifies him of a scheduled hearing. (*Id*. at 1.) In short, Dykeman states that he "neither took nor was responsible for actions that hindered Mr. Weller's ability to pursue any legal claim." (*Id*. at 2.)

After his small claim was dismissed, Weller filed a timely appeal in state court. In this appeal, Weller listed three reasons for his failure to appear at the hearing: (1) he was incarcerated; (2) "the court never contacted … Dykeman to set up a phone conference for the hearing"; and (3) he "was not notified by the court that [he] had to set up [the] phone conference [and] was led to believe by [Dykeman] that said court would contact the facility." (Doc. 36-6.) The Orleans Superior Court denied the appeal in a written order dated August 4, 2009 (Doc. 36-7), and Weller did not appeal further to the Vermont Supreme Court (Doc. 36-8).

Several months after the denial of his appeal in state court, Weller initiated the DOC grievance procedure. DOC has a multi-step grievance system for prisoners who seek to challenge alleged violations of their constitutional rights. According to the DOC's Department Directive 320.01, which was in effect at all times relevant to Weller's grievance, an informal complaint must be filed within 10 business days of the incident.[6] (Doc. 36-9 at 1, 8.) Upon the filing of an informal complaint, officials at the facility (in consultation with the inmate) have 48 hours to agree to a plan to resolve the complaint. (*Id*. at 9.) If the prisoner receives an adverse determination at this first level, he can file a formal grievance within 14 business days. (*Id*. at 1, 12.) The department is then obligated to respond within 20 business days. (*Id*. at 12.) Upon receipt of the decision on the formal grievance, appeal can be had to a Corrections Executive within 10 business days, whose decision must issue within 20 business days thereafter. (*Id*. at 16.) Finally,

---

[6] Before the filing of any grievance, "the Department encourages staff and offenders/inmates to continue the daily positive process of discussing issues before they rise to the level of a documented informal complaint." (Doc. 36-9 at 8.)

5

appeal can be had, within 10 business days of receiving the decision of the Corrections Executive, to the Commissioner of Corrections, who must make a final determination within 20 business days. (*Id.* at 1, 15-17.) "The Commissioner is the final arbiter of inmate grievances." (*Id.* at 1.)

According to Weller's Complaint, he filed an informal grievance in December 2009. (Doc. 5 at 2.) He received no response. (*Id.* at 3.) On January 5, 2010, he filed a formal grievance, and again received no response. (*Id.*) Thereafter, on January 31, 2010, he appealed to a Corrections Executive, which was never responded to. (*Id.*) Finally, Weller appealed to the Commissioner of Corrections on March 3, 2010, which, again, was never answered. (*Id.*)[7]

Weller filed the instant Complaint on July 23, 2010 alleging that Dykeman violated his constitutional right of access to the courts. (*Id.* at 1.) Weller sought compensatory damages for the value of the property lost ($522.00), additional damages "for the violation of Plaintiff's fundamental rights" ($50,000.00), and punitive damages due to Dykeman's "evil and malicious motives" ($50,000.00). (*Id.* at 6-7.)

Dykeman now moves for summary judgment on two grounds: (1) Weller failed to exhaust his administrative remedies, as called for by 42 U.S.C. § 1997e(a); and (2) Weller's allegations fail to state a constitutional violation because Dykeman took no

---

[7] In his Complaint, Weller refers to each stage by its assigned number in the DOC's offender grievance system. An informal complaint is referred to as a "Grievance Form #1" (Doc. 36-9 at 24), a formal grievance is referred to as a "Grievance Form #2" (*id.* at 25), an appeal to a Corrections Executive is termed a "Grievance Form #5" (*id.* at 30), and the final appeal to the Commissioner is a "Grievance Form #7" (*id.* at 32).

intentional, deliberate steps to hinder Weller's pursuit of his cause of action in small-claims court. (Doc. 36.)

## Discussion

### I.     Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The central question is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

The moving party bears the burden to show that no genuine issue of material fact exists. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). In determining whether summary judgment is appropriate, this court must construe the evidence in the light most favorable to the non-movant and draw all reasonable inferences in his favor. *Sledge v. Kooi*, 564 F.3d 105, 108 (2d Cir. 2009) (citing *Anderson*, 477 U.S. at 247-50).

With respect to a motion for summary judgment involving a non-moving, *pro se* plaintiff, this court "liberally construe[s] [the] pleadings and briefs submitted by [the] *pro se* litigant[]," "reading such submissions to raise the strongest arguments they suggest." *Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007) (quotation marks omitted). But,

in general, "[e]ven a *pro se* plaintiff [] cannot withstand a motion for summary judgment by relying merely on the allegations of a complaint." *Saldana v. Local 32B-32J Serv. Emps. Int'l Union*, No. 03 Civ. 1853, 2005 WL 66895, at *4 (S.D.N.Y. Jan. 12, 2005).[8]

Dykeman claims that Weller has failed to take the steps required by Rule 56 to meet the motion for summary judgment. Dykeman points out that Weller did not submit any response to the motion. Dykeman suggests, by reference to the general rule stated above, that this court may not consider the factual allegations present in Weller's Complaint because "the party opposing summary judgment may not rest upon mere allegations or denials in his pleadings." (Doc. 36 at 4.)

This argument misses the mark. What Dykeman overlooks is that, although *unsworn* statements in pleadings are insufficient to defeat a motion for summary judgment, Weller verified his Complaint by attesting under penalty of perjury, pursuant to 28 U.S.C. § 1746,[9] that the statements of fact present in that Complaint were true to the best of his knowledge. (Doc. 5 at 7.) In ruling on a motion for summary judgment, declarations supported as called for by 28 U.S.C. § 1746 may be treated as sworn statements. *Worsham*, 185 F.3d at 65-66. "A verified complaint is to be treated as an

---

[8] The Second Circuit has required that *pro se* litigants be provided with explicit notice of the consequences of failing to respond to a motion for summary judgment. *See Vital v. Interfaith Medical Center*, 168 F.3d 615, 620-21 (2d Cir. 1999); *see also* Local Rule 56(e). The required notice was sent in this case. (Doc. 40.)

[9] "Section 1746 allows for the submission of an unsworn declaration to a court if it 'is subscribed by [the declarant], as true under penalty of perjury, and dated, in *substantially* the following form:' ... 'I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on (date). (Signature)'." *LeBoeuf, Lamb, Greene & MacRae, L.L.P. v. Worsham*, 185 F.3d 61, 65 (2d Cir. 1999) (quoting 28 U.S.C. § 1746). Section 1746 recognizes that, by opening himself up to a possible criminal prosecution for perjury under 18 U.S.C. §§ 1621, 1623, Weller should receive an added benefit for submitting such a complaint, namely, its treatment as the evidentiary equivalent of an affidavit.

affidavit for summary judgment purposes, and therefore will be considered in determining whether material issues of fact exist, provided that it meets the other requirements for an affidavit under Rule 56(e)."[10] *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995); *see Gayle v. Gonyea*, 313 F.3d 677, 682 (2d Cir. 2002); *see also El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008) (a verified complaint carries the same force as an affidavit for purposes of summary judgment where the plaintiff "signed his complaint under penalty of perjury pursuant to 28 U.S.C. § 1746"). Verification pursuant to 28 U.S.C. § 1746, even absent notarization, is sufficient to qualify a document as an affidavit. *See* 10B CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2738 (2012) ("Since 1976, affidavits no longer need to be notarized and will be admissible if they are made under penalties of perjury; only unsworn affidavits will be rejected."). Put another way, verification of a complaint pursuant to 28 U.S.C. § 1746 transforms the factual statements therein "from 'mere allegations' of a pleading into 'specific facts' as in an evidentiary affidavit." *McNeal v. Macht*, 763 F. Supp. 1458, 1461 (E.D. Wis. 1991) (treating *pro se* plaintiff's complaint, which included declaration consistent with 28 U.S.C. § 1746, as the equivalent of an affidavit in assessing defendant prison officials' motion for summary judgment).

As a result, in considering Dykeman's motion for summary judgment, I give proper consideration to the facts alleged in Weller's Complaint.

---

[10] These requirements, which were moved from Rule 56(e) to Rule 56(c)(4) pursuant to a 2010 amendment to the rule, *see* 10B CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2738 (2012), include: (1) the affidavit must be made on personal knowledge; (2) the facts alleged must be admissible in evidence; and (3) the affiant must be competent to testify on the matters stated. Fed. R. Civ. P. 56(c)(4). Each requirement is met here.

## II. Failure to Exhaust

Dykeman first maintains that Weller failed to exhaust his administrative remedies by his non-compliance with time limits for filing his grievance. According to Weller's Complaint, Dykeman's alleged misconduct occurred in January 2009 (Doc. 5 at 4-5), but he did not file an informal grievance until December 2009 (*id*. at 2). Dykeman maintains that this delay, which falls well outside the ten business day limit for the filing of an informal grievance (Doc. 36-9 at 8), means that Weller did not exhaust his administrative remedies.[11]

In the Prison Litigation Reform Act of 1995 ("PLRA"), Congress imposed an exacting exhaustion requirement on all prisoners filing a lawsuit under federal law: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The phrase "prison conditions" as used in the PLRA refers to "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S.

---

[11] The failure to exhaust under the PLRA is an affirmative defense, *Jones v. Bock*, 549 U.S. 199, 212 (2007), and, because it is not a predicate for this Court's exercise of jurisdiction, "this defense is waiv[]able," *Johnson v. Testman*, 380 F.3d 691, 695 (2d Cir. 2004). Although Dykeman failed to raise this affirmative defense in his motion for judgment on the pleadings, its inclusion in Dykeman's list of 22 defenses present in his answer (Doc. 8 at 5-6), which was filed before the motion for judgment on the pleadings, was sufficient to preserve the defense for the purposes of Dykeman's summary judgment motion. *See Villante v. VanDyke*, 93 Fed. App'x. 307, 308-09 (2d Cir. 2004); *see also Handberry v. Thompson*, 446 F.3d 335, 342-43 (2d Cir. 2006); *Johnson*, 380 F.3d at 695-96; *Ware v. Maloney*, 117 Fed. App'x. 775, 775 (1st Cir. 2005). *But see Colton v. Scutt*, No. 10-CV-13073, 2011 WL 6090152, at *2-3 (E.D. Mich. Dec. 7, 2011) (concluding that defendant who did not raise a failure to exhaust defense in the initial responsive pleading thereby waived that defense; the defendant elected to file a motion to dismiss, on other grounds, as the first responsive pleading, and only included the failure to exhaust in the subsequently-filed answer).

516, 532 (2002). This exhaustion requirement is strict and mandatory—"unexhausted claims may not be pursued in federal court." *Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011). Indeed, prisoners must utilize state grievance procedures even where the relief sought, such as money damages, is not offered through those procedures. *See Booth v. Churner*, 532 U.S. 731, 741 (2001).

The question this case presents is the extent of exhaustion required. According to his Complaint, Weller filed the proper grievance form required at each level of decision, including appeal to the Commissioner of Corrections (i.e., the final step). Having done so, he claims now to have "fully exhausted all of his available administrative remedies." (Doc. 5 at 2.) But, by his own description in his Complaint, he failed to meet the procedural deadlines for the filing of the initial, informal grievance.[12] So Weller exhausted his administrative remedies only if, pursuant to the PLRA, exhaustion does not require adherence to such deadlines.

In a 2006 decision, the Supreme Court of the United States specifically addressed this very question. In *Woodford v. Ngo*, 548 U.S. 81 (2006), a California state prisoner, by a § 1983 claim against prison officials, challenged restrictions on his participation in certain special religious programs. The prisoner had filed a grievance with prison officials before bringing his claim to federal court, but he did so six months after the restriction was imposed, well outside of the applicable 15 day window for the filing of

---

[12] Even granting the premise that Weller's appeal of his small claims matter somehow tolled the applicable deadline, Weller still failed to meet the DOC's deadline. The appellate decision on the small claim was issued in August 2009, and Weller did not file his grievance until December 2009, well outside of the ten day window for filing of the grievance.

11

such grievances. After a lengthy review of the scope of exhaustion required under administrative law and in habeas proceedings, a six-justice majority of the Supreme Court held that the filing of this grievance did not constitute "proper exhaustion" for the purposes of the PLRA. *Id*. at 93. By the Court's estimation, "proper exhaustion" requires "that a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Id*. at 88. According to the *Woodford* Court, prisoners must comply with "critical procedural rules" applicable to grievance claims to satisfy the exhaustion requirement. *Id*. at 90. Thus, the PLRA's exhaustion requirement is not satisfied by "untimely or otherwise procedurally defective attempts to secure administrative remedies." *Ruggiero v. County of Orange*, 467 F.3d 170, 176 (2d Cir. 2006) (citing *Woodford*, 548 U.S. at 84).[13]

The Court firmly rejected the prisoner's view, which it termed "exhaustion *simpliciter*," that exhaustion simply means that a prisoner may not bring suit in federal court until administrative remedies are no longer available, regardless of why those remedies are unavailable. Adherence to this position, the Court held, would render the PLRA's exhaustion requirement "wholly ineffective."

> A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction, and under [the prisoner's]

---

[13] The Second Circuit has carved out an exception to *Woodford* in cases of untimely grievances that are nonetheless decided on the merits. "[T]he exhaustion requirement of the PLRA is satisfied by an untimely filing of a grievance if it is accepted and decided on the merits by the appropriate prison authority." *Hill v. Curcione*, 657 F.3d 116, 125 (2d Cir. 2011). This limitation is inapplicable in the instant case, however, because it is evident from the face of Weller's Complaint that prison officials never responded to his initial grievance or any of his subsequent appeals. (Doc. 5 at 2-3.)

12

interpretation of the PLRA noncompliance carries no significant sanction. For example, a prisoner wishing to bypass available administrative remedies could simply file a late grievance without providing any reason for failing to file on time. If the prison then rejects the grievance as untimely, the prisoner could proceed directly to federal court. And acceptance of the late grievance would not thwart the prisoner's wish to bypass the administrative process; the prisoner could easily achieve this by violating other procedural rules until the prison administration has no alternative but to dismiss the grievance on procedural grounds. We are confident that the PLRA did not create such a toothless scheme.[14]

*Id*. at 95.

*Woodford* directly applies to the instant case. "*Woodford* leaves no doubt that filing dates are 'critical procedural rules' under prison administrative resolution programs, as that case itself involved a missed filing date." *Torres v. Anderson*, 674 F. Supp. 2d 394, 400 (E.D.N.Y. 2009). By engrafting a procedural default limitation onto all § 1983 claims, *Woodford* effectively shrank the otherwise applicable three-year statute of limitations[15] to whatever window the department deemed sufficient. As relevant here, the DOC opted for a ten day deadline. By missing this deadline, Weller failed to exhaust his administrative remedies.

---

[14] This reasoning has been subject to criticism. Two commentators have proposed that instead of dismissing all § 1983 claims outright due to a late-filed grievance, "[t]he court could dismiss the suit without prejudice (or stay it) to allow the prisoner to file a late grievance, thereby giving the prison authorities the option of deciding whether to address the claim on the merits despite its tardiness." Giovanna Shay & Johanna Kalb, *More Stories of Jurisdiction-Stripping and Executive Power: Interpreting the Prison Litigation Reform Act (PLRA)*, 29 CARDOZO L. REV. 291, 296 (2007). And truly stale claims would never arrive in court, given the applicable statute of limitations. Such a system would do precisely what the *Woodford* majority calls for, "provide[] prisons with a fair opportunity to correct their own errors," *Woodford*, 548 U.S. at 94, (and thereby potentially forestall litigation), while preserving the inmate's constitutional rights by allowing him to return to federal court.

[15] The statute of limitations for actions under § 1983 is the statute of limitations applicable to personal injuries occurring in the state in which the appropriate federal court sits. 42 U.S.C. § 1988; *see Wilson v. Garcia*, 471 U.S. 261 (1985). In Vermont, the applicable statute of limitations for personal injuries is three years. 12 V.S.A. § 512.

> Although denial of plaintiff's claim for non-exhaustion may seem severe considering his status as a prisoner and *pro se* litigant, the Supreme Court considered that in *Woodford* and held that such considerations "overlook[] the informality and relative simplicity of prison grievance systems ... as well as the fact that prisoners who litigate in federal court generally proceed *pro se* and are forced to comply with numerous unforgiving deadlines and other procedural requirements."

*Id*. at 401 (quoting *Woodford*, 548 U.S. at 103). As the foregoing demonstrates, Weller did not "properly" exhaust his administrative remedies as called for in *Woodford*. *See Avent v. Solfaro*, No. 02 Civ. 0914, 2010 WL 2985904, at *4-5 (S.D.N.Y. July 29, 2010); *Hargrove v. Riley*, No. CV-04-4587, 2007 WL 389003, at *6-7 (E.D.N.Y. Jan. 31, 2007).

Because Weller failed to exhaust his administrative remedies, I turn to whether this failure should be excused. In *Hemphill v. New York*, 380 F.3d 680 (2d Cir. 2004) the Second Circuit established a three-part inquiry to guide this analysis. First, failure to exhaust can be excused where administrative remedies were not, in fact, available to the prisoner at the time of the incident. *Id*. at 686. Second, if those remedies were available, "the court should . . . inquire as to whether the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it . . . or whether the defendants' own actions inhibiting the inmate's exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense." *Id.* (citations omitted). Third, if the remedies were available and defendants are not estopped from raising the non-exhaustion defense, "the court should consider whether 'special circumstances' have been plausibly alleged that justify the prisoner's failure to comply

with administrative procedural requirements." *Id.* (citations and internal quotations omitted).[16]

Here, there is no dispute that the DOC's grievance procedure was available to Weller at all times relevant to this case. Indeed, he availed himself of the entire process, albeit several months late. Further, Weller has alleged no reason why Dykeman should be estopped from raising his failure to exhaust as a defense, nor have "special circumstances" been alleged, such as a reasonable misinterpretation of the administrative regulations, that would justify his failure. As a result, this court cannot excuse Weller's non-exhaustion.

Accordingly, Dykeman's motion for summary judgment must be GRANTED for Weller's failure to exhaust his administrative remedies.

## III. Weller's Access to the Courts Claim

Although Dykeman renews his earlier objection to Weller's constitutional claim, *see infra* n.1, he also raises a new argument as to why the undisputed facts establish that no constitutional violation occurred. According to Dykeman, he merely acted "unintentionally or negligently" in failing to arrange for Weller's telephone call to the small-claims court, which cannot constitute a deprivation of Weller's right of access to the courts. (Doc. 36 at 8.)

---

[16] The Second Circuit has repeatedly declined to address whether *Woodford* affected the continued viability of the *Hemphill* framework for excusing the failure to exhaust. *See, e.g.*, *Amador,* 655 F.3d at 102-03. Because Weller has no excuse for his failure to exhaust even under the pre-*Woodford* case law, this question need not be addressed.

On the merits, Dykeman may be right. *See Morello v. James*, 810 F.2d 344, 347 (2d Cir. 1987); *Daniels v. Williams*, 474 U.S. 327, 328 (1986) ("the Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty, or property"). But it requires little in the way of analysis to conclude that a "genuine dispute as to a[] material fact" exists at this stage of the proceedings. Fed. R. Civ. P. 56(a). As stated, this court properly considers the facts alleged in Weller's verified Complaint. Therein, Weller alleges, with some specificity, that Dykeman acted intentionally to bar him from participating in his small-claims hearing. Dykeman, on the other hand, denies Weller's allegations by affidavit and claims that he cannot specifically recall whether he had known about the small-claims hearing before the case was dismissed. (Doc. 36-5 at 1.) In short, Weller alleges intent while Dykeman asserts his negligence. Given this disagreement, Dykeman has failed to carry his burden to prove the absence of any genuine issue of material fact, and summary judgment on the merits of Weller's claim is inappropriate at this stage. For this reason, I recommend that Dykeman's motion for summary judgment be DENIED on the merits.

## IV. Leave to Amend

Under Fed. R. Civ. P. 15(a), leave to amend a pleading "shall be freely given when justice so requires." *See Local 802, Associated Musicians of Greater New York v. Parker Meridien Hotel*, 145 F.3d 85, 89 (2d Cir. 1998) (recognizing "broad" discretion of the district court to grant leave to amend). A district court should not dismiss a *pro se* filing "without granting leave to amend at least once when a liberal reading of the complaint gives *any* indication that a valid claim *might* be stated." *Cuoco v. Moritsugu*, 222 F.3d

99, 112 (2d Cir. 2000) (internal quotation marks omitted and emphasis added). "Implicit in the right to self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training." *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983). The rights of *pro se* litigants "should not be impaired by harsh application of technical rules." *Id*. The Second Circuit has been particularly protective of *pro se* litigants where summary judgment is sought against them. *See Vital v. Interfaith Medical Center*, 168 F.3d 615, 621 (2d Cir. 1999).

Given the liberal reading due this *pro se* Complaint, the absence of any response to Dykeman's summary judgment motion, and this court's finding that minimal delay will not unduly prejudice Dykeman, Weller should be allowed an opportunity to amend his Complaint. *See Green v. Department of Correction*, No. 97 Civ. 6652, 1999 WL 710782, at *2 (S.D.N.Y. Sept. 13, 1999) (noting that courts permit amendment even after summary judgment motions are filed).

If Weller chooses to submit an amended filing, the filing shall be entitled "Amended Complaint" and must contain all claims against all parties, as it will supersede the original Complaint in all respects. The court should also require that the Amended Complaint be filed within thirty days of its ruling on this Report and Recommendation. Failure to so amend should result in the dismissal of all claims with prejudice.

17

## **Conclusion**

For the reasons set forth above, I recommend that Dykeman's motion for summary judgment be GRANTED due to Weller's failure to exhaust his administrative remedies. In the event that the court does not accept this recommendation, Dykeman's motion should otherwise be DENIED on the merits of Weller's constitutional claim due to the existence of a disputed material fact.

I further recommend that, if this Report and Recommendation is adopted by the court, Weller be allowed thirty days to file an Amended Complaint. Failure to file an Amended Complaint within such time should result in the dismissal of the case with prejudice.

Dated at Burlington, in the District of Vermont, this 10th day of October, 2012.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within fourteen days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b)(2); L.R. 72(c). Failure to timely file such objections "operates as a waiver of any further judicial review of the magistrate's decision." *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).